UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUIZ E LIMA DE MORAES,

                Plaintiff,

    v.

GREYHOUND LINES, *et al.*,

                Defendants.

Case No. 2:23-cv-06764-FLA (ASx)

**MEMORANDUM OF DECISION
FOLLOWING BENCH TRIAL**

1

**RULING**

Plaintiff Luiz E. Lima De Moraes ("Plaintiff"), proceeding *pro se*, brings this action against Defendant Greyhound Lines, Inc.[1] ("Defendant" or "Greyhound") for lost goods pursuant to 49 U.S.C. § 14706, *et seq.* (the "Carmack Amendment"). FAC at 2–3.[2]

The court held a bench trial on May 6, 2025. Dkt. 81 ("Tr."). On June 20, 2025, and June 23, 2025, Defendant and Plaintiff, respectively, filed proposed findings of fact and conclusions of law. Dkts. 84 ("Def.'s Mem."), 87 (Pl.'s Mem.").

After considering and weighing the evidence presented and evaluating the witnesses' credibility at trial, the court:

      1.    FINDS Defendant liable on Plaintiff's sole claim;

      2.    AWARDS Plaintiff $5,101.13 in damages; and

      3.    DENIES Plaintiff's request for attorney's fees and costs.

The court sets forth below its findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a).[3] To the extent any findings of fact are inadvertently

---

[1] Plaintiff's First Amended Complaint ("FAC") erroneously lists "Greyhound Busline Inc." as the defendant to this action. Dkt. 29 ("FAC") at 1. Defendant filed an answer to the FAC and did not dispute it was the correct defendant. *See* Dkt. 33; *see also Aguilar v. Enersys Energy Prods., Inc.*, Case No. 2:21-cv-08669-SVW (MARx), 2022 WL 2285657, at *2 (C.D. Cal. Jan. 18, 2022) ("By answering to and defending under a misnomer, the misnomer is waived.") (citing William M. Fletcher, 9A Cyclopedia of the Law of Corporations, Naming and Describing Corporation—Misnomer § 4494 (2021), quotation marks omitted)).

[2] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

[3] "In bench trials, Fed. R. Civ. P. 52(a) requires a court to find the facts specially and state separately its conclusions of law thereon." *Vance v. Am. Haw. Cruises, Inc.*, 789 F.2d 790, 792 (9th Cir. 1986) (quotation marks omitted). One purpose behind this rule "is to aid the appellate court's understanding of the basis of the trial court's decision." *Id.* (citation omitted). "This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions." *Id.* (citations omitted).

labeled as conclusions of law (or vice versa), they shall be considered "in [their] true light, regardless of the label that the [] court may have placed on [them]." *Tri-Tron Int'l v. Velto*, 525 F.2d 435, 435 (9th Cir. 1975) (citations omitted).

## **FINDINGS OF FACT**

In July 2022, Plaintiff prepared to move from Edison, New Jersey, to Long Beach, California. Tr. at 5:10–12; 7:25–8:1. He heard Defendant had a shipping service to ship boxes interstate. *Id.* at 8:1–3. Plaintiff found the website Busfreighter.com, which connected shippers with carriers and advertised Defendant's shipping services. *Id.* at 8:12–16, 59:16–20.

Busfreighter.com's website would not allow Plaintiff to complete his purchase online, so he called the company and spoke with its owner, Kevin Pierce ("Pierce"). *Id.* at 8:21–7. Plaintiff explained the technological challenge to Pierce and told him the total value of the twelve-parcel shipment (eleven boxes and one suitcase) was around $12,000 to $15,000. *Id.* at 9:13–17. Plaintiff testified he never agreed, in writing or verbally, to a $1,000 total liability limit for the shipment. *Id.* at 31:11–19. Busfreighter.com subsequently sent Plaintiff twelve labels for his parcels. *Id.* at 10:11–17. Plaintiff ultimately paid $1,019.22 for the shipment, *id.* at 24:19–24, and was told the shipment would take approximately fourteen days to reach its destination, *id.* at 11:10–13.

In his eleven boxes and one suitcase, Plaintiff packed personal belongings, including "clothes, tools, kitchen utensils, living room[] decoration pieces, bedroom stuffs, towels, sheet set, everything that everybody could have at their homes." *Id.* at 8:6–11. Plaintiff intended to ship eight and then four parcels, with the latter containing items he needed to finalize his move. *Id.* at 10:14–19. Plaintiff wrapped some of the boxes in plastic wrap, *id.* at 21:10, though he admitted at least one box was "not totally closed," *id.* at 25:22–26:1. Plaintiff did not take any photographs of the first eight boxes he shipped, but did photograph the second shipment of four parcels, which was admitted as Trial Exhibit 14 and shows a black plastic storage

container, two brown boxes wrapped numerous times in clear plastic wrap, and a white Amazon-branded box taped shut. Trial Exhibit 13, Plaintiff's Proposed Findings of Fact and Conclusions of Law (previously docketed as Dkt. 62), declares Plaintiff packed $1,000 worth of items in each of the eight parcels in the first shipment, and $800 worth of valuables in each of the four parcels in the second shipment.

On August 1, 2022, a Busfreighter.com driver in a minivan and without a uniform arrived at Plaintiff's New Jersey residence and left with the initial eight parcel shipment. *Id.* at 10:20–11:4, 61:3–6. The other four parcels were picked up in a similar manner the following day. *Id.* at 11:4–7.

Plaintiff arrived in Long Beach and, after waiting at least twenty[4] days for his delivery, began to suspect the shipment had gone awry. *Id.* at 11:16–21. He attempted to call Defendant's shipping division many times, but on the few occasions he managed to get a customer service representative on the telephone, he received rude responses and no assistance. *Id.* at 11:22–12:21. One of Defendant's customer service representatives eventually told Plaintiff he should expect the parcels in a few days, as several parcels were in Los Angeles, California, and others were in Albuquerque, New Mexico. *Id.* at 12:22–23:1.

On September 8, 2022, five weeks after the twelve parcels had been picked up in New Jersey, seven boxes arrived at Plaintiff's new address in Long Beach, California. *Id.* at 13:3–7, 19:1–8, 36:19–25. The parcels were delivered by a non-uniformed third party. *Id.* at 13:11–17. The tracking numbers for the remaining five parcels showed the items were in "St. Louis, Missouri, Chicago, like random cities in the middle of the country" over a month after their original shipment. *Id.* at 15:8–12. Plaintiff never received the remaining five parcels. *Id.* at 19:11–12. Four parcels

---

[4] The timeline of Plaintiff's calls is unclear but is not pertinent to the court's analysis of Plaintiff's claim.

4

from the first shipment and one parcel from the second shipment ultimately were never delivered to Plaintiff's Long Beach residence. *Id.* at 26:9–18.

Among the lost parcels was a suitcase containing "winter clothes, gloves, scarfs, leather jackets, jeans, [and] pants." *Id.* at 19:19:21. Plaintiff was unable to provide an exhaustive list of the contents of the other four boxes, but knew they included "[p]ower tools, drills, batteries for the drills, flashlights," a spear fishing wetsuit and gloves, two snorkels and masks, motorcycle gloves, clothes, special edition holiday hats, which were no longer available for purchase, "small electronic devices like speakers, … massage gun," camera alarm systems for his business, an Xbox videogame system (of uncertain model) and assorted games, duffle bags, and backpacks, all of which were "nice stuff[ and from] nice brands." *Id.* at 19:25–21:2. Trial Exhibit 2, a 49-page printout of Amazon.com receipts for items Plaintiff claimed were never delivered, was admitted into evidence.[5] The total value of the goods listed in Trial Exhibit 2 was $5,101.13, although Plaintiff noted that "many items that were not delivered to [him were] not in [Trial Exhibit 2] because [Plaintiff did not] have the receipt[s.]" *Id.* at 28:18–19.

Plaintiff also testified that items were missing from the seven parcels that were delivered to his Long Beach residence. *Id.* at 21:9–13. After accounting for his lost property, Plaintiff stated that the items that were delivered consisted of "very cheap stuff[, like] key chain[s], utensils, towels, some clothes, some shoes, some other hats, … house decoration pieces. But most valuable stuff[] is gone." *Id.* at 21:14–17. Plaintiff estimates he lost property worth $12,000.[6] *Id.* at 21:18–24. Several of the boxes which arrived had been "smashed, violated, opened" and were "clearly with a knife cut[] and retaped." *Id.* at 26:20–27:5.

---

[5] Pages 43–49 appear to be duplicative of pages 1–7. Accordingly, the court will not consider the duplicative items in its analysis.

[6] Plaintiff initially claimed a loss of $40,000, but after an accounting of his missing items, revised his claim to $12,000. *Id.* at 22:7–12.

In response to Plaintiff's evidence, Defendant argued it never received Plaintiff's second shipment. *See id.* at 40:24–42:21, 45:18–47:25, 78:2–4. Trial Exhibit 1 contains documents resembling luggage ticket tags (the "Tags") Plaintiff was given at the time of each shipment. Eight of the Tags are for "GLI[7] 3090314062," state the shipment consists of eight parcels, and were generated on August 2, 2022, at 9:06 a.m. Four of the Tags are for "GLI 3090316614," state the shipment contains four parcels, and were generated on August 3, 2022, at 1:23 p.m. The Tags bear sufficient indicia of authenticity and reliability, and corroborate Plaintiff's testimony concerning Defendant's receipt of Plaintiff's two shipments through a third-party driver. Defendant's claim that it has no record of taking possession of Plaintiff's second shipment, *id.* at 62:8–11, is unconvincing as Plaintiff unequivocally received parcels from *both* shipments, *id.* at 41:13–17. Accordingly, the court finds Plaintiff has established by a  preponderance of the evidence that Defendant took possession of Plaintiff's two shipments.

## CONCLUSIONS OF LAW

The Carmack Amendment imposes liability on a common carrier for the actual loss or injury to goods in an interstate commerce shipment. *See* 49 U.S.C. § 11706. The Amendment imposes strict liability upon a carrier, with a burden-shifting standard. To establish a prima facie case against a common carrier, a plaintiff shipper must establish (1) delivery of the goods in good condition, (2) arrival in a damaged (or lost) condition, and (3) the amount of damages. *Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964). Upon a plaintiff's satisfaction of all three criteria, the burden shifts to the carrier to prove damages were caused by one or more recognized common law exceptions, which can relieve the carrier of liability. *Id.* at 137. The recognized exceptions are: "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the

---

[7] Presumably, "GLI" refers to Greyhound Lines, Inc.

goods." *Id.* (citations and quotation marks omitted).

**I.      Delivery of Goods in Good Condition**

Plaintiff has established delivery of both shipments in good condition to Defendant.  Plaintiff testified credibly about the arrangements he made to ship the parcels, the items he packed, and the arrival of parcels from both shipments at his Long Beach residence, which was only possible if Defendant took possession of both shipments.  *See* Tr. at 41:13–17.

Defendant argues Plaintiff failed to establish the "condition of his goods at the time Greyhound took possession of Plaintiff's goods."  Def.'s Mot. at 4.  The court disagrees.  As an initial matter, the condition of goods delivered to a carrier can be established through direct or circumstantial evidence.  *See, e.g.*, *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 901 F.2d 1034, 1039 (11th Cir. 1990) (plaintiff sufficiently established prima facie case of condition of goods with circumstantial evidence); *Cont'l Ins. Co. v. Premier Transportation & Warehousing, Inc.*, Case No. 2:17-cv-07280-JAK (AGRx), 2019 WL 8628717, at *9 (C.D. Cal. Nov. 15, 2019) (applying the *Fine Foliage* standard).

Plaintiff testified credibly that the items he delivered to Defendant were "nice stuffs, nice brands."  Tr. at 20:22.  Plaintiff also testified credibly that Defendant informed him that his boxes may have been opened for "inspect[ions]" during the shipping process.  *Id.* at 27:6–7.  Had such inspection(s) occurred, Defendant would have been able to memorialize the state of Plaintiff's property upon receipt.  Defendant, however, offered no such evidence and did not credibly refute Plaintiff's evidence concerning his delivery of goods in good condition.  Accordingly, the court rejects Defendant's argument.

Finally, a plaintiff "may satisfy the first Carmack element with a showing that the nature of the damage is such that the damage could only have occurred while the carrier possessed the goods."  *Great Am. Ins. Co. v. USF Holland Inc.*, 937 F. Supp. 2d 376, 385 (S.D.N.Y. 2013) (citing *Transatlantic Marine Claims Agency, Inc. v. M/V*

*OOCL Inspiration*, 137 F.3d 94, 99 (2d Cir. 1998)).  Here, damages arise from the failure to deliver Plaintiff's parcels due to loss or theft, which could only have occurred, based on the evidence presented at trial, while Defendant possessed the goods.  In sum, the court finds Plaintiff has established the first element of his claim under the Carmack Amendment.[8]

**II.     Arrival in Damaged or Lost Condition**

A shipper also may use direct or circumstantial evidence to establish delivery of goods in a damaged or lost condition.  *See Fuente Cigar, Ltd. v. Roadway Exp., Inc.*, 961 F.2d 1558, 1561 (11th Cir. 1992).  Plaintiff established at trial that he did not receive all parcels he delivered in New Jersey for interstate shipment, and that items were removed from parcels delivered to Plaintiff's Long Beach residence.

Defendant argues Plaintiff "entrusted a [third-]party courier to transport his parcels from his home in New Jersey to the Greyhound station," did the same "to transport his parcels from Greyhound's Los Angeles station to his Long Beach home," "does not know the identity of this [third-]party courier who could easily be the party responsible for taking Plaintiff's property," and "allowed his parcels to be delivered to his Long Beach home when he was not present to secure them."[9]  Def.'s Mem at 5.  The court disagrees.

---

[8] Defendant also argues "Plaintiff's evidence establishes that he did not secure his parcels before tending them to the [third-]party courier for shipment in that he has produced a photograph showing his parcels secured with clear plastic wrap, not taped, or secured by other means from the prying eyes of thieves."  Def.'s Mem. at 5.  Defendant relies upon Trial Exhibit 14, which consists of two photographs of Plaintiff's second shipment.  Plaintiff shipped a black plastic box, a white Amazon-branded box in sturdy condition, and two large bulky brown boxes wrapped in copious amounts of plastic wrap.  Plaintiff testified that the only box he did not receive from the second shipment was the *white* box, which was taped shut.  Tr. at 26:11–12.

[9] Defendant submits this argument in the context of raising the third exception to carrier liability (the acts of a shipper).  Def.'s Mem. at 5 (citing *Missouri Pac. R. Co.*,

Plaintiff testified credibly that the "lady from the [Greyhound] warehouse that received [his] parcels called [him] saying [his] boxes [had] arrived," Tr. at 36:4–5, and further clarified that "the lady from the [Greyhound] warehouse, the driver, and the tracking number at the time was showing Los Angeles station, seven boxes," *id.* at 36:23–25.  Plaintiff, therefore, established by a preponderance of the evidence that it was Defendant, not a Busfreighter.com courier, who failed to deliver Plaintiff's parcels, as only seven of twelve parcels arrived in Los Angeles for Busfreighter.com to transport to Plaintiff's Long Beach residence.

## III.   Damages

Plaintiff also sufficiently established damages at trial.  "Under the Carmack Amendment, damages are … the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the damaged condition in which it did arrive." *Neptune Orient Lines, Ltd. v. Burlington N. & Santa Fe Ry. Co.*, 213 F.3d 1118, 1120 (9th Cir. 2000) (cleaned up).  "Therefore, when the property does not arrive at all, we are left to determine its market value at the destination had it arrived safely." *Id.*

Defendant argues Plaintiff "failed to establish the market value of his goods" as he "provided no evidence of the condition of his lost items" and the "only evidence submitted [were] purported receipts of the purchase price of various items, all of which presumptively depreciated over the years due to use, general age, and changes in technology." Def.'s Mem. at 6.  However, "[r]eplacement cost is an appropriate measure of damages where the injured party [can] mitigate the loss by replacing the goods." *Neptune Orient Lines*, 213 F.3d at 1120.

/ / /

/ / /

---

377 U.S. at 138).  As the argument is both a rebuttal of Plaintiff's prima facie case and a post-prima facie case defense, the court combines its analysis for the sake of efficiency.

9

Plaintiff testified credibly regarding items Defendant failed to deliver and produced receipts adding up to at least $5,101.13.[10] Tr. at 19:19–21:17. Accordingly, the court finds Plaintiff has made a prima facie showing that the value of the lost items amounts to at least $5,101.13. Plaintiff also estimated that the value of the items he packed inside the missing four boxes from the first shipment was $1,000 per box, and the value of the property in the one box missing from the second shipment was $800. *Id.* at 26:9–18. As Plaintiff testified credibly that items were missing from boxes that were delivered, the court finds Plaintiff is entitled to recover $5,101.13.

Plaintiff's request for reimbursement for "gas, paralegal fee, court fees, parking fees, constable department fees, printing costs, days off work and also psychological damages for all the stress this situation generated" is denied as barred by the Carmack Amendment. *See Hall v. N. Am. Van Lines, Inc*, 476 F.3d 683, 688 (9th Cir. 2007) (holding Carmack Amendment "is the exclusive cause of action for contract claims alleging delay, loss, failure to deliver or damage to property."). Plaintiff does not bring a cause of action for infliction of emotional distress and provided an insufficient estimate of litigation costs. *See* FAC; Tr. at 17:18–18:12, 79:1–24. Even if Plaintiff had properly established costs incurred in prosecuting the action, *pro se* parties are barred from receiving attorney's fees under federal statutes. *See Carnese v. Standard Ins. Co.*, Case No. 3:06-cv-00211-MO, 2006 WL 2045104, at *3 (D. Or. July 19, 2006) (collecting cases).

Accordingly, the court finds Plaintiff has established actual damages of $5,101.13 for goods lost in interstate commerce shipment, but is not entitled to additional compensation.

/ / /

/ / /

---

[10] Several items lacked prices, and no evidence was presented as to their value. In calculating this total, the court excluded these items as well as duplicative items found on pages 43 through 49 of Trial Exhibit 2.

## CONCLUSION

For the foregoing reasons, the court:

1. FINDS Defendant liable on every claim;

2. AWARDS Plaintiff $5,101.13 in actual damages for goods lost in interstate commerce shipment;

3. DENIES Plaintiff's request for attorney's fees and costs; and

4. ORDERS Defendant to pay Plaintiff's award within sixty (60) days of the date of this Order.

The court ORDERS judgment be entered in Plaintiff's favor consistent with this Memorandum of Decision.

IT IS SO ORDERED.

Dated: March 26, 2026

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge

11